24-1405-cv
*Mauer v. Pension Comm. of the Nat'l Basketball Ass'n Referees' Pension Plan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand twenty-five.

Present:
> AMALYA L. KEARSE,
> ROBERT D. SACK,
> EUNICE C. LEE,
> > *Circuit Judges.*

---

KENNETH MAUER,

> *Plaintiff-Appellee,*

> v.                                                         No. 24-1405-cv

PENSION COMMITTEE OF THE NATIONAL
BASKETBALL ASSOCIATION REFEREES' PENSION
PLAN,

> *Defendant-Appellant,*

NATIONAL BASKETBALL ASSOCIATION,
NBA SERVICES CORP.,

> *Defendants.*<sup>*</sup>

---

---

<sup>*</sup> The Clerk of the Court is respectfully directed to amend the caption as set forth above.

For Plaintiff-Appellee:                    SHELDON KARASIK, ESQ.,
                                           New York, NY.

For Defendant-Appellant:                   MYRON D. RUMELD, Proskauer Rose
                                           LLP, New York, NY (John E.
                                           Roberts, Proskauer Rose LLP,
                                           Boston, MA; Sydney Juliano,
                                           Proskauer Rose LLP, New York,
                                           NY, *on the brief)*.

Appeal from an April 22, 2024 judgment of the United States District Court for the Southern District of New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Pension Committee of the National Basketball Association Referees' Pension Plan ("Committee") appeals from the district court's grant of summary judgment for Kenneth Mauer, determining that the Committee is liable under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), because the Committee violated the plain terms of the NBA Referees' Pension Plan ("Plan") by denying Mauer's application for lump sum payment of his benefits.

In January 2023, Mauer applied for his pension benefits after he was terminated from the National Basketball Association ("NBA") for violating a COVID-19 vaccination policy. On March 1, 2023, the Committee denied Mauer's application because it was not "sufficiently clear" that he had "attained a distribution event" under the Plan. J. App'x at 145. Specifically, the Committee reasoned that, although Section 8.2(a)(iii) of the Plan lists "termination of employment" as a distribution event, *see* J. App'x at 53, Mauer's participation in a separate,

2

pending lawsuit against the NBA could result in his reinstatement and thus led to "uncertainty regarding [his] intention to return to employment," J. App'x at 145. Through counsel, Mauer appealed the decision internally and contended that: (1) reinstatement was not a realistic possibility, as he had only requested monetary relief in that separate action, and (2) he had attained a "distribution event" because "[t]here is no question the NBA terminated [his] employment." J. App'x at 152. After the Committee denied his appeal on the same grounds as its initial determination, Mauer sought review in federal district court.[1] In granting summary judgment for Mauer, the district court concluded that, in the context of the Plan, "termination of employment" unambiguously follows its plain meaning as "[t]he complete severance of an employer-employee relationship," and Mauer had therefore qualified for his pension payment. J. App'x at 298–302

We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

\* \* \*

This Court reviews a grant of summary judgment *de novo*. *See Ford v. McGinnis*, 352 F.3d 582, 587 (2d Cir. 2003). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334,

---

[1] Mauer initially brought an action against the NBA, the NBA Services Corp. ("NSC"), and the Committee under ERISA for violations of 29 U.S.C. §§ 1131(a)(1)(B) and (a)(3). The district court ultimately dismissed the claims against the NBA and NSC because Mauer conceded that both were improper defendants and dismissed his 29 U.S.C. § 1131(a)(3) claim for breach of fiduciary duty because Mauer conceded that it was duplicative.

344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ERISA cases where a pension plan participant moves for summary judgment against a plan administrator, summary judgment is appropriate when the plan language 'unambiguously' supports the participant's interpretation." *McCutcheon v. Colgate-Palmolive Co.*, 62 F.4th 674, 686 (2d Cir.), *cert. denied*, 144 S. Ct. 99 (2023). This Court subjects "the determination that an ERISA plan provision is unambiguous to *de novo* review." *Massaro v. Palladino*, 19 F.4th 197, 209 (2d Cir. 2021) (quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999)).

When reviewing a denial of benefits, this Court's standard of review depends on the ambiguity of the pertinent plan language. "[W]hen an administrator is interpreting unambiguous plan terms, we generally apply a *de novo* standard of review because 'unambiguous language leaves no room for the exercise of discretion.'" *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121 (2d Cir. 2022) (quoting *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)); *see also Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 n.6 (2d Cir. 2007). However, if the plan language is ambiguous and the plan vests discretionary authority with an administrator to construe the plan's terms, the Court reviews the administrator's interpretation of the plan terms under the arbitrary and capricious standard. *See McCutcheon*, 62 F.4th at 687. "Therefore, whether the language of the plan is ambiguous effectively determines the outcome of our analysis." *Id.*

## I.    Exhaustion & Forfeiture

We turn first to the parties' procedural arguments. On the one hand, the Committee contends that Mauer's assertion that "termination of employment" unambiguously refers to severance of the employer-employee relationship—regardless of any potential for future

4

reinstatement—was offered for the first time in briefing before the district court, rather than in the Committee's internal review process, and thus Mauer has skirted ERISA's exhaustion requirement. On the other hand, Mauer argues that the Committee has waived any exhaustion defense. Even if the Committee had not, Mauer argues that he complied with the Plan's administrative appeals process, the ERISA exhaustion requirement only applies to claims and not issues, and the unambiguous meaning of "termination" was effectively raised in his internal appeal.

We agree with Mauer that the Committee's argument has been forfeited.[2] "In general, a federal appellate court does not consider an issue not passed upon below." *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) (internal quotation marks omitted). A litigant may forfeit an argument by "failing to present it to the district court." *Muto v. CBS Corp.*, 668 F.3d 53, 60 (2d Cir. 2012). In proceedings before the district court, Mauer explicitly argued that "termination of employment" is unambiguous in his brief opposing the Committee's motion to dismiss and cross-moving for summary judgment. In its reply to Mauer's brief, despite having notice and the opportunity to do, the Committee did not assert that Mauer's interpretation had been unexhausted in the Plan's internal review procedures. Therefore, we find that the argument has been forfeited.[3]

---

[2] Although Mauer argues that the Committee waived ERISA exhaustion, the term "'forfeiture' is more appropriate when 'a litigant's action or inaction is deemed to incur the consequence of a loss of right, or a defense.'" *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 n.10 (2d Cir. 2023) (alterations adopted) (quoting *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999)). Because the ERISA exhaustion requirement is not jurisdictional, a plan administrator may forfeit the affirmative defense if it is not properly invoked. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006).

[3] We note that, irrespective of forfeiture, it is uncontested that Mauer has exhausted "those administrative appeals provided for in the relevant plan or policy" and so ERISA's exhaustion requirement has been satisfied. *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)). The Committee acknowledged before the

## II. Ambiguity of "Termination of Employment"

On the merits, the Committee primarily argues that the district court erred by finding "termination of employment" to be unambiguous. We disagree and concur with the district court's assessment that "termination of employment" follows its plain meaning. "Whether ERISA plan language 'is ambiguous is a question of law that is resolved by reference to the contract alone.'" *Strom*, 497 F.3d at 244 n.6 (quoting *O'Neil*, 37 F.3d at 59). To determine whether "termination of employment" is ambiguous, we must read the phrase "in the context of the entire agreement." *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 100 (2d Cir. 2019) (quoting *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)). We do not "find [a] contract ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Law Debenture Tr. Co. of N.Y.*, 595 F.3d at 467 (alterations adopted) (internal quotation marks omitted).

As the district court noted, Black's Law Dictionary (11th ed. 2019) defines "termination of employment" as "[t]he complete severance of an employer-employee relationship." J. App'x at 298. Post-dating the district court's analysis, the latest edition of Black's Law Dictionary defines "termination of employment" simply as "[t]he severance of an employer-employee relationship," *Termination*, Black's Law Dictionary (12th ed. 2024), aligning more closely with

---

district court that Mauer's administrative claim had been "fully exhausted." J. App'x at 168. Before us, the Committee seeks to expand the exhaustion requirement so that claimants must present all contentions in internal proceedings or otherwise be barred from raising such arguments in federal litigation. This Circuit's ERISA exhaustion doctrine has no such "issue exhaustion" requirement, and we decline to create one here. *See, e.g., Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002) ("We require exhaustion of benefit *claims* brought under ERISA." (emphasis added)); *see also Gannon v. NYSA-ILA Pension Tr. Fund & Plan*, No. 09-CV-10368 PGG, 2011 WL 868713, at *6 (S.D.N.Y. Mar. 11, 2011).

the Merriam-Webster's Collegiate Dictionary definition of "terminate" in the employment context as "[t]o discontinue the employment of," J. App'x at 298. *See also New York's Health & Hum. Serv. Emps. Union, 1199/SEIU, AFL-CIO v. Grossman*, No. 02CV6031(SLT)(JMA), 2007 WL 2907386, at *20 (E.D.N.Y. Oct. 3, 2007) (quoting Merriam-Webster's Collegiate Dictionary 1212 (10th ed. 2001)); *Moore v. Warehouse Club, Inc.*, 992 F.2d 27, 29 (3d Cir. 1993) ("The ordinary meaning of the word 'terminate' in an employment context is defined as follows: 'To discontinue the employment of.'" (quoting The American Heritage Dictionary 1254 (2d ed. 1982))). The Committee's attempt to introduce an additional condition—that there be "no reasonable possibility that the participant would return to work," Appellant's Br. at 12—strains the phrase's ordinary meaning.

The Plan's other provisions confirm that "termination of employment," in context, refers to severance of the employer-employee relationship without qualification. First, the Plan uses the term "former Referee" in various clauses but does not distinguish between classes of former referees based on how the employment relationship ended. Second, the Plan expressly considers that a former referee, including one that had been terminated, might be re-hired by the NBA and governs, *inter alia*, Plan participation eligibility, pension benefit calculation, and vesting, as evidenced by Sections 2.3, 4.1(s), and 7.1. By way of illustration, Section 7.1 provides that if a "Referee is terminated before his Normal Retirement Date" but later "resumes employment," the referee's years of service prior to termination will be considered to evaluate how much of that referee's benefit has vested. J. App'x at 49–50. Such language undermines the assertion that "termination of employment" is intended to refer only to instances where there is no reasonable probability that a terminated referee will return to work.

7

Accordingly, the district court did not err in finding that the term "termination of employment" is unambiguous.   Since the term is unambiguous, the Committee must honor its plain meaning.   *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 137 (2d Cir. 2001) ("[U]nambiguous language in an ERISA plan must be interpreted and enforced according to its plain meaning." (internal quotation marks omitted)).   Here, because Mauer suffered a severance in the employer-employee relationship in September 2022, Mauer had attained a "distribution event" as defined by the Plan and is entitled to his pension benefits.

*                    *                    *

We have considered the Committee's remaining arguments and find them to be without merit.   For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8